UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DARRIN LAPINE,

              Plaintiff,          Case No. 1:17-cv-768

v.                                      Honorable Janet T. Neff

F. JOHNSON et al.,

              Defendants.
_____/

**OPINION DISMISSING CLAIMS FOR MISJOINDER AND DENYING LEAVE
TO PROCEED *IN FORMA PAUPERIS* - THREE STRIKES**

       This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff sought and was granted leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed without prejudice for misjoinder with respect to Defendants Corizon Inc., the Michigan Department of Corrections, Prison Health Services, Dr. Dominguez, Nurse Friess, Dr. Stievie, Michigan Department of Corrections, Subrina Aiken, A/Sgt. Mathews, and Amy Houtz.

With the dismissal of the improperly joined claims, it is apparent that Plaintiff is not entitled to proceed in this Court *in forma pauperis*. Because Plaintiff has filed at least three lawsuits that were dismissed as frivolous, malicious or for failure to state a claim, he is barred from proceeding *in forma pauperis* under 28 U.S.C. § 1915(g). Accordingly, the Court will order Plaintiff to pay the $400.00 civil action filing fee applicable to those not permitted to proceed *in forma pauperis*. This fee must be paid within twenty-eight (28) days of this opinion and accompanying order. If Plaintiff fails to pay the fee, the Court will order that this case be dismissed without prejudice. Even if the case is dismissed, Plaintiff must pay the $400.00 filing fee in accordance with *In re Alea*, 286 F.3d 378, 380-81 (6th Cir. 2002). Upon payment of the $400.00 filing fee, the Court will screen Plaintiff's properly joined claims against Defendants Johnson and VanOpynen.

## **Factual Background**

Plaintiff Darrin LaPine is presently incarcerated with the MDOC at the Parnall Correctional Facility in Jackson, Michigan. The events of which he complains, however, occurred while Plaintiff was incarcerated at the Lakeland Correctional Facility (LCF) in Coldwater, Michigan, between April 7, 2014, and September 17, 2014.

Upon Plaintiff's arrival at LCF, he was housed in Unit B-5. Defendant Corrections Officer F. Johnson was the regular second shift unit officer on Plaintiff's unit. Plaintiff and Defendant Johnson were involved in a confrontation on Plaintiff's first day at LCF. According to Plaintiff, thereafter, Defendant Johnson targeted Plaintiff, harassing, threatening, and retaliating against him.

After Plaintiff arrived at LCF, he began to receive returns of grievances he had written while he was incarcerated at other MDOC facilities. The grievances came to the attention of Defendant Johnson. Plaintiff alleges that Defendant Johnson threatened Plaintiff, at least twenty times, with transfer to a less desirable unit if he continued to write grievances.

On May 22, 2014, Plaintiff alleges that his wrist brace was taken during a shakedown. Plaintiff claims that Defendant Doctor Victor Dominguez, and other medical staff, were notified of the loss, but were deliberately indifferent to Plaintiff's serious medical need.

On May 29, 2014, Plaintiff and Defendant Johnson were involved in another confrontation. Plaintiff alleges that Defendant Johnson and Defendant Prisoner Counselor VanOpynen colluded to transfer Plaintiff to a less desirable unit (the "pole barns"). Captain Watson put a stop to that move, but Plaintiff was still transferred to a different unit, Unit C-3, which Plaintiff describes as better than the pole barns, but worse than Unit B-5.

On May 30, 2014, after Plaintiff was transferred to Unit C-3, Plaintiff was involved in another confrontation with Defendant Johnson while Plaintiff was on the yard. Defendant Johnson wrote a misconduct ticket on Plaintiff for being out of place. Plaintiff contends the misconduct was false and in retaliation for Plaintiff's grievances against Defendant Johnson. Plaintiff was adjudicated "not guilty" of the misconduct upon a review of the video evidence by the hearing officer.

Plaintiff alleges that he experienced severe pain in his back, neck, hips, legs, knees, and wrist, while he was at LCF. He submitted numerous health care requests. Plaintiff claims his medical records establish the need for back surgery and a wrist brace, but several Defendants, including Dr. Dominguez, Health Unit Manager Pamella Friess, the MDOC, and Prison Health

Services, were deliberately indifferent to those serious medical needs. Plaintiff claims that Dr. Dominguez was also deliberately indifferent to Plaintiff's lip sores. Plaintiff claims other Defendants, including Defendant Dr. Jeffrey Stievie, and Subrina Aiken, were also deliberately indifferent to his serious medical needs.

Plaintiff alleges that on August 9, 2014, Defendant Johnson jammed an ID scanner into Plaintiff's hand in the chow hall. Plaintiff contends this was an excessive use of force in violation of the Eighth Amendment as well as a retaliatory act for Plaintiff's exercise of his First Amendment rights.

On August 26, 2014, Plaintiff alleges that Defendant A/Sgt. Mathews placed Plaintiff in a cage in the control center, with no toilet or water access for several hours. Plaintiff contends that the conditions in the cage violated his Eighth Amendment rights and that Defendant Mathews caged Plaintiff in retaliation for Plaintiff's exercise of his First Amendment rights.

Plaintiff complains that Unit C-3 had excessive lighting and inadequate ventilation. He complained to Defendant ARUS Amy Houtz, to no avail. Plaintiff claims he suffered severe headaches and could not breathe. Plaintiff filed a grievance against Defendant Houtz on September 2, 2014. Defendant Houtz called Plaintiff into her office on September 10, 2014, and threatened Plaintiff if he did not sign off on the grievances. Plaintiff refused. Plaintiff claims he was transferred to the Adrian Correctional Facility on September 17, 2014, for exercising his First Amendment rights.

Plaintiff alleges that he has filed grievances regarding all of the conduct of which he complains. He states that the earliest grievance was not exhausted until October 24, 2014, and

that all other grievances were not exhausted until 2015. Accordingly, Plaintiff contends, his claims are timely.

## Discussion

I. Misjoinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 CHARLES ALLEN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE CIVIL § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), and *Garcia v. Munoz*, No. 08-1648, 2007 WL 2064476, at *3 (D.N.J. May 14,

2008); *see also Neitzke v. Williams*, 490 U.S. 319, 328 (1989) (joinder of defendants is not permitted by Rule 20 unless both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778. When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts of . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Michigan Dep't of Corrections*, 2007 WL 4465247, at *3 (E.D. Mich. December 18, 2007)).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation by making all prisoner litigants feel the deterrent effect created by liability for filing fees." *Williams v. Roberts*, 116 F.3d 1126, 1127-28 (5th Cir. 1997). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding *in forma pauperis*, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three

strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like Plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]—defendant suit produce[s] but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions— should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168-69 (3rd Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Tuft v. Texas,* 397 F. App'x 59, 61 (5th Cir. 2010) ("In addition, 'the creative joinder of actions' by prisoner plaintiffs to avoid the strictures of the Prison Litigation Reform Act of 1995 . . . should be discouraged."); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) ("We doubt that Congress intended that § 1915(g) could be so facilely circumvented by the creative joinder of actions."); *Shephard v. Edwards*, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D.

7

Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule).

Plaintiff's first allegations concern the actions of Defendant Johnson on April 7, 2014, when Defendant Johnson began to threaten Plaintiff for filing grievances. Plaintiff also alleges that Defendant Johnson, on May 29, 2014, threatened to have Plaintiff transferred to a less desirable unit because of Plaintiff's grievances. Plaintiff alleges that Defendant Johnson wrote a false and retaliatory misconduct against him on May 30, 2014. Finally, Plaintiff alleges that Defendant Johnson, on August 9, 2014, used excessive force against Plaintiff in retaliation for Plaintiff's grievances.

With one exception, Plaintiff does not allege that any of the other Defendants participated in those particular instances of misconduct. The exception is Plaintiff's contention that Defendant VanOpynen conspired with Defendant Johnson to effect Plaintiff's transfer to a less desirable unit in retaliation or Plaintiff's filing of grievances. The liability of Defendants Johnson and VanOpynen as co-conspirators would be joint. *See, e.g., Non-Ferrous Metals Inc. v. Saramar Aluminum Co.*, 25 F.R.D. 102, 104 (N.D. Ohio 1960) ("Conspirators are jointly and severally liable and all may be joined . . . ."). Thus, those parties and claims are properly joined under Rule 20 and Rule 18.

For purposes of determining the propriety of joinder with respect to the remaining parties, the Court must determine whether Plaintiff's remaining claims against all of the other Defendants are part of the same series of transactions and occurrences as Plaintiff's first claims against the co-conspirators. With respect to Plaintiff's claims against Defendants Corizon, MDOC, Prison Health Services, Dr. Dominguez, Dr. Stievie, Nurse Friess, and Subrina Aiken, the

claims arise from the failure to treat Plaintiff's back and wrist injuries. The claims arose during the same five month period while Plaintiff was incarcerated at LCF; but they are otherwise unrelated to the First and Eighth Amendment claims against Johnson and VanOpynen. The facts required to establish Plaintiff's claims against the healthcare Defendants are entirely distinct from the facts that establish Plaintiff's claims against Johnson and VanOpynen. Accordingly, they are not properly joined.

The same is true for Plaintiff's claims against Defendants Mathews and Houtz. They are distinct in time, place, and participants from Plaintiff's claims against Defendants Johnson and VanOpynen and, thus, are not properly joined to those claims.[1]

Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("Parties may be dropped . . . by order of the court . . . of its own initiative at any stage of the action and on such terms as are just."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have

---

[1] Plaintiff might argue that all of the claims are linked because all of the Defendants acted in retaliation for Plaintiff's filing of grievances. Plaintiff's conclusory allegations of retaliation shows that Defendants may have all had the same motivation when they acted against Plaintiff. The allegations do not, however, show that the Defendants (with the exception of Defendants Johnson and VanOpynen) acted together when they undertook the distinct transactions and occurrences that gave rise to Plaintiff's complaint.

9

important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV, Inc.*, 467 F.3d at 845. Such gratuitous harm exists if the dismissal results in the party's loss of the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846-47; *Michaels Building Co.*, 848 F.2d at 682.

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* MICH. COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003). Moreover, the statute of limitations is tolled for the period during which a plaintiff's available state remedies were being exhausted. *See Brown v. Morgan*, 209 F.3d 595, 596-97 (6th Cir. 2000). Plaintiff claims his state remedies were not exhausted until October 24, 2014, as to one claim (the cancellation of the wrist brace), and until 2015 as to the rest.

Based on Plaintiff's allegations, it appears he has weeks or months before the statute of limitations would expire as to any of his claims. Those claims are not at risk of being time-barred. Plaintiff therefore will not suffer gratuitous harm if the improperly joined Defendants are dismissed. Accordingly, the Court will exercise its discretion under Rule 21 and dismiss, for

10

misjoinder, Plaintiff's claims against Defendants Corizon Inc., the Michigan Department of Corrections, Prison Health Services, Dr. Dominguez, Nurse Friess, Dr. Stievie, Subrina Aiken, A/Sgt. Mathews, and Amy Houtz, without prejudice to the institution of new, separate lawsuits by Plaintiff against those Defendants.[2] *See Coughlin*, 130 F.3d at 1350 ("'In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs'"); *Carney*, 2008 WL 485204, at *3 (same).

The elimination of Plaintiff's misjoined claims requires the Court to revisit its earlier order granting Plaintiff leave to proceed *in forma pauperis*. The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which was enacted on April 26, 1996, amended the procedural rules governing a prisoner's request for the privilege of proceeding *in forma pauperis*. As the Sixth Circuit has stated, the PLRA was "aimed at the skyrocketing numbers of claims filed by prisoners – many of which are meritless – and the corresponding burden those filings have placed on the federal courts." *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). For that reason, Congress created economic incentives to prompt a prisoner to "stop and think" before filing a complaint. *Id.* For example, a prisoner is liable for the civil action filing fee, and if the prisoner qualifies to proceed *in forma pauperis*, the prisoner may pay the fee through partial payments as outlined in 28 U.S.C. § 1915(b). The constitutionality of the fee requirements of the PLRA has been upheld by the Sixth Circuit. *Id.* at 1288.

In addition, another provision reinforces the "stop and think" aspect of the PLRA by preventing a prisoner from proceeding *in forma pauperis* when the prisoner repeatedly files meritless lawsuits. Known as the "three-strikes" rule, the provision states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under [the section governing proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any

---
[2] Plaintiff is cautioned that he must limit all future actions to Defendants who are transactionally related to one another.

11

> facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The statutory restriction found in § 1915(g), is express and unequivocal. The statute does allow an exception for a prisoner who is "under imminent danger of serious physical injury." The Sixth Circuit has upheld the constitutionality of the three-strikes rule against arguments that it violates equal protection, the right of access to the courts, and due process, and that it constitutes a bill of attainder and is *ex post facto* legislation. *Wilson*, 148 F.3d at 604-06; *accord Pointer v. Wilkinson*, 502 F.3d 369, 377 (6th Cir. 2007) (citing *Wilson*, 148 F.3d at 604-06); *Rodriguez v. Cook*, 169 F.3d 1176, 1178-82 (9th Cir. 1999); *Rivera v. Allin*, 144 F.3d 719, 723-26 (11th Cir. 1998); *Carson v. Johnson*, 112 F.3d 818, 821-22 (5th Cir. 1997).

Plaintiff has been an active litigant in the federal courts in Michigan. In at least three of Plaintiff's lawsuits, the Court entered dismissals on the grounds that the cases were frivolous, malicious, and/or failed to state a claim. *See LaPine v. Rubitschun et al.*, 1:06-cv-249 (W.D. Mich. May 8, 2006); *LaPine v. Atterberry et al.*, 1:06-cv-647 (W.D. Mich. Dec. 11, 2006); *LaPine v. Chippewa County Corr. Facility et al.*, 2:10-cv-238 (W.D. Mich. Aug. 5, 2011). All of Plaintiff's dismissals were entered after enactment of the PLRA on April 26, 1996. Moreover, Plaintiff has been denied leave to proceed *in forma pauperis* because of his three strikes on more than one occasion. *LaPine v. Savoie et al.*, 2:14-cv-145 (W.D. Mich. July 29, 2014); *LaPine v. Waino et al.*, 2:17-cv-49 (W.D. Mich. April 28, 2017).

Plaintiff's properly joined allegations do not fall within the "imminent danger" exception to the three-strikes rule. 28 U.S.C. § 1915(g). The Sixth Circuit set forth the following general requirements for a claim of imminent danger:

> In order to allege sufficiently imminent danger, we have held that "the threat or prison condition must be real and proximate and the danger of serious physical injury must exist at the time the complaint is filed." *Rittner v. Kinder*, 290 F. App'x 796, 797 (6th Cir. 2008) (internal quotation marks omitted). "Thus a prisoner's assertion that he or she faced danger in the past is insufficient to invoke the exception." *Id*. at 797–98; *see also* [*Taylor v. First Med. Mgmt.*, 508 F. App'x 488, 492 (6th Cir. 2012)] ("Allegations of past dangers are insufficient to invoke the exception."); *Percival v. Gerth*, 443 F. App'x 944, 946 (6th Cir. 2011) ("Assertions of past danger will not satisfy the 'imminent danger' exception."); *cf*. [*Pointer v. Wilkinson*, 502 F.3d 369, 371 n.1 (6th Cir. 2007)] (implying that past danger is insufficient for the imminent-danger exception).
>
> In addition to a temporal requirement, we have explained that the allegations must be sufficient to allow a court to draw reasonable inferences that the danger exists. To that end, "district courts may deny a prisoner leave to proceed pursuant to § 1915(g) when the prisoner's claims of imminent danger are conclusory or ridiculous, or are clearly baseless (i.e. are fantastic or delusional and rise to the level of irrational or wholly incredible)." *Rittner*, 290 F. App'x at 798 (internal quotation marks and citations omitted); *see also Taylor*, 508 F. App'x at 492 ("Allegations that are conclusory, ridiculous, or clearly baseless are also insufficient for purposes of the imminent-danger exception.").

*Vandiver v. Prison Health Services, Inc.*, 727 F.3d 580, 585 (6th Cir. 2013). A prisoner's claim of imminent danger is subject to the same notice pleading requirement as that which applies to prisoner complaints. *Id*. Consequently, a prisoner must allege facts in the complaint from which the Court could reasonably conclude that the prisoner was under an existing danger at the time he filed his complaint, but the prisoner need not affirmatively prove those allegations. *Id*.

The only allegations of imminent danger made by Plaintiff relate to the failure to treat his back and wrist injuries. That danger relates only to Plaintiff's claims against Defendants Corizon Inc., the Michigan Department of Corrections, Prison Health Services, Dr. Dominguez, Nurse Friess, Dr. Stievie, and Subrina Aiken, claims that are properly dismissed for improper joinder. Plaintiff alleges no imminent danger arising from his properly joined claims against Defendant Johnson and VanOpynen. Plaintiff is no longer at LCF.

13

The Second Circuit has imposed a requirement that there be some nexus between the imminent danger alleged by the prisoner and the legal claims asserted in his complaint. *See Pettus v. Morgenthau*, 554 F.3d 293, 297 (2d Cir. 2009). The Sixth Circuit has declined to address whether § 1915(g) incorporates a nexus requirement, *Vandiver v. Prison Health Services, Inc.*, 727 F.3d 580, 588 (6th Cir. 2013); but, the Sixth Circuit has noted that the prisoner must allege some "relationship between the alleged danger and the claims contained in the underlying complaint." *Shephard v. Clinton*, 27 F. App'x 524, 525 (6th Cir. 2001). Here there is no such relationship.

Therefore, § 1915(g) prohibits Plaintiff from proceeding *in forma pauperis* in this action. Therefore, the Court's August 25, 2017, order granting Plaintiff leave to proceed *in forma pauperis* (ECF No. 3), will be vacated. Plaintiff has twenty-eight (28) days from the date of entry of this order to pay the entire civil action filing fee, which is $400.00. When Plaintiff pays his filing fee, the Court will screen his complaint as required by 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c). If Plaintiff does not pay the filing fee within the 28-day period, this case will be dismissed without prejudice, but Plaintiff will continue to be responsible for payment of the $400.00 filing fee.

Dated: September 13, 2017                    /s/ Janet T. Neff
                                                                Janet T. Neff
                                                                United States District Judge

**SEND REMITTANCES TO THE FOLLOWING ADDRESS**:
Clerk, U.S. District Court
399 Federal Building
110 Michigan Street, NW
Grand Rapids, MI 49503

**All checks or other forms of payment shall be payable to "Clerk, U.S. District Court."**