UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRIN LaPINE #305535,

               Plaintiff,

v.

F. JOHNSON, et al.,

               Defendants.

_____/

Hon. Janet T. Neff

Case No. 1:17-cv-768

## REPORT AND RECOMMENDATION

The Court has before it Defendants' Motion for Summary Judgment. (ECF No. 47.) Plaintiff has filed a response.  (ECF No. 52.)  Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

Plaintiff, a state prisoner incarcerated with the Michigan Department of Corrections (MDOC), filed a complaint pursuant to 42 U.S.C. § 1983 against a number of MDOC employees alleging violations of his constitutional rights based on events that occurred while Plaintiff was incarcerated at Lakeland Correctional Facility (LCF) in Coldwater, Michigan, between April 7, 2014, and September 17, 2014.   Plaintiff was initially granted leave to proceed *in forma pauperis*. On initial screening, the Court determined that Plaintiff's claims, other than his claims against Defendant Corrections Officer F. Johnson and Defendant Prison Counselor VanOpynen, were subject to dismissal for misjoinder.   (ECF No. 4 at PageID.62–65.)   The Court also revisited the initial grant of *in forma pauperis* status and concluded that because Plaintiff did not meet the Prison

Litigation Reform Act's imminent danger exception to the three-strikes rule, his *in forma pauperis* status should be revoked.   (*Id.* at PageID.67–68.)   Plaintiff appealed the denial of *in forma pauperis* status to the Sixth Circuit, which found that Plaintiff satisfied the imminent danger exception and remanded for further proceedings.   (ECF No. 16.)

Plaintiff's remaining claims in the case are that:   (1) Defendant Johnson retaliated against him in violation of the First Amendment; (2) Defendant Johnson violated his due process rights by filing a false misconduct ticket; (3) Defendant Johnson used excessive force on him in violation of the Eighth Amendment; (4) Defendant VanOpynen retaliated against him in violation of the First Amendment; and (4) Defendants Johnson and VanOpynen conspired to retaliate against him in violation of 42 U.S.C. §§ 1985 and 1986.[1]

Plaintiff was transferred to LCF on or about April 7, 2014, and was placed in housing unit B-5 by Lt. Armstrong.   Defendant Johnson was the regular second shift officer in unit B-5.   (ECF No. 1 at PageID.3.)   Plaintiff and Defendant Johnson were involved in a confrontation on Plaintiff's first day at LCF.   Lt. Armstrong told Plaintiff to pick up his property from the control center.   Plaintiff did not go directly to the control center, but instead returned to his unit to first use the bathroom.   As Plaintiff was leaving the unit to retrieve his property, Defendant Johnson stopped him and asked where he was going.   Plaintiff told Defendant Johnson that, at Lt. Armstrong's direction, he was going to the control center to get his property.   Defendant Johnson refused to let Plaintiff leave.   After Plaintiff brought up the issue with a captain, Defendant Johnson told Plaintiff that he needed to learn how things operated in the unit.   Defendant Johnson

---

[1]  Plaintiff asserts in his response that he also has an independent claim against Johnson for reading his mail in violation of the First Amendment.   (EFC No. 52 at PageID.305.)   Upon review of Plaintiff's complaint, the undersigned concludes that Plaintiff's claims against Defendant Johnson cannot be reasonably construed to include a separate First Amendment claim, even affording the complaint a liberal interpretation necessitated by Plaintiff's pro se status.

eventually allowed Plaintiff to get his property but thereafter targeted Plaintiff by harassing, threatening, and retaliating against him.  (*Id.* at PageID.4.)

After Plaintiff arrived at LCF, he began to receive in the mail returns of grievances he had written while he was incarcerated at other MDOC facilities.  Because Defendant Johnson delivered the mail to the prisoners in the unit, he was aware of Plaintiff's grievances.  When Plaintiff received grievance returns, Defendant Johnson would raise his voice and loudly state that "anyone who files a grievance is weak, a bitch, a punk and there shouldn't be a grievance procedure."  (ECF No. 1 at PageID.5.)  Plaintiff alleges that such conduct occurred at least 20 times.  Defendant Johnson threatened to move Plaintiff to the pole barns if Plaintiff continued to receive grievances in the mail.  (*Id.*)

On May 22, 2014, the facility conducted an emergency mobilization, and the prisoners were told to report to the day room and leave their belongings in the unit.  Plaintiff left his wrist brace in his locker.  When the prisoners returned, their property was thrown in the middle of the floor.  Plaintiff's wrist brace was missing.  Plaintiff reported that it was taken during the search and filed a grievance against Defendant VanOpynen and a doctor.  The wrist brace was never returned or replaced.  (*Id.* at PageID.5–6.)

On May 29, 2014, Plaintiff and Defendant Johnson had another confrontation when Defendant Johnson commented about Plaintiff receiving more grievances in the mail.  At some point before or after May 29, Plaintiff helped prisoner Hough write a grievance against Defendant Johnson.  On June 2, 2014, Defendant Johnson threatened to "whip [Plaintiff's] ass" and move Plaintiff out of the unit.  Defendant Johnson stated that he had read all of Plaintiff's grievances and knew that Plaintiff helped prisoner Hough write a grievance against Johnson.  A short time later, Defendant Johnson told Defendant VanOpynen that he wanted Plaintiff moved out of the

unit immediately because of the Hough grievance, the wrist brace grievance, and the grievances Plaintiff had been receiving in the mail.   Defendant VanOpynen agreed, and a few minutes later, arranged the move on the computer.   (*Id.* at PageID.7–8.)   The next day, Plaintiff was told to pack up and move to the pole barns, but Captain Watson intervened and instead moved Plaintiff to unit C-3—a less desirable unit than unit B-5 but better than the pole barns.   Plaintiff filed a grievance against both Johnson and VanOpynen for the retaliatory move and collusion.   (*Id.* at PageID.8.)

On June 4, 2014, Defendant Johnson issued a misconduct to Plaintiff for being out of place. Following a hearing on June 13, 2014, Plaintiff was found not guilty on the misconduct.   On August 9, 2014, Defendant Johnson jammed an identification scanner into Plaintiff's hands and identification card when Plaintiff was attempting to obtain a meal, causing injury.   (*Id.* at PageID.12–13; ECF No. 52-1 at PageID.321.)

## MOTION STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a).   Material facts are facts that are defined by substantive law and are necessary to apply the law.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   A dispute is genuine if a reasonable jury could return judgment for the non-moving party.   *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."   *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## DISCUSSION

## I.      Retaliation Claim

The requirements for a valid First Amendment retaliation claim are well established.   In order to state a First Amendment retaliation claim, a plaintiff must establish that:   (1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct;" and (3) the adverse action was taken (at least in part) because of the protected conduct.   *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).   In addition, a plaintiff must be able to prove that the protected conduct was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).   If the plaintiff can show that his protected conduct was a substantial or motivating factor in the defendant's alleged retaliatory conduct, "the burden shifts to the defendant to show that the same action would have been taken even absent the protected conduct."   *Brown v. Crowley*, 312 F.3d 782, 787 (6th Cir. 2002) (citing *Thaddeus-X*, 175 F.3d at 399).

### A.      Protected Conduct

The filing of prison grievances constitutes protected conduct for purposes of a First Amendment retaliation claim.   *See Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (noting that protected conduct "includes a prisoner's undisputed First Amendment right to file grievances against prison officials on his own behalf") (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)).   Defendants argue that Plaintiff fails to show that he engaged in protected conduct because, while it is undisputed that Plaintiff filed grievances, he has not shown that the grievances he filed that were delivered to him in the mail were non-frivolous.   Defendants further argue that,

with respect to the grievance he assisted prisoner Hough in filing, Plaintiff fails to show that his assistance constituted protected conduct.   Finally, although Defendants concede that Plaintiff's wrist brace grievance was non-frivolous, they argue that, because the grievance did not address Defendant Johnson at Step II and does not mention Defendant Johnson with respect to Plaintiff's missing wrist brace (LCF-2014-05-0632-19C; *see* ECF No. 48-2 at PageID.251–54), it makes no sense that Defendant Johnson would have believed the grievance was directed at him.

Defendants are correct that a prisoner has a First Amendment right to file grievances "only if the grievances are not frivolous."   *Herron*, 203 F.3d at 415 (citing *Lewis v. Casey*, 518 U.S. 343, 353 (1996)).   Although Plaintiff mentions that the grievances he received in the mail were from various MDOC facilities, he fails to describe an issue in even one of them in order to demonstrate that they were non-frivolous.[2]   Nonetheless, regarding the prisoner Hough grievance, Plaintiff states that Hough needed Plaintiff's help because he had no idea how to file a grievance; he could not spell well; no one else, including the law clerks, would assist him; and Hough knew that Plaintiff was knowledgeable about filing grievances.   (ECF No. 52-1 at PageID.314.) Plaintiff's allegation suffices to show that his legal assistance to prisoner Hough qualifies as protected conduct.   *See Evans v. Vinson*, 427 F. App'x 437, 445–46 (6th Cir. 2011) (holding that a plaintiff who assisted another prisoner in filing a grievance may establish that he engaged in protected conduct by showing that the assisted prisoner "needed assistance and had no reasonable alternative but to seek that assistance from another prisoner").   In any event, Plaintiff has presented evidence that Defendant Johnson was aware of his wrist brace grievance and acted in

---

[2]  Plaintiff continues to argue that the prior order denying his motion for subpoenas to obtain copies of his grievances was erroneous.   (ECF No. 52 at PageID.301.)   However, the motion was denied because Plaintiff's request was untimely, and the order was upheld by Judge Neff on appeal. (ECF Nos. 61, 63.)   Moreover, Plaintiff does not necessarily need the grievance documents to describe some of the issues he was grieving in the grievances he received in the mail.

response to it.[3]   (ECF No. 52-1 at PageID.359.)   Accordingly, Plaintiff has presented sufficient evidence to show that he engaged in protected conduct.

### B.   Adverse Action

Defendants argue that Plaintiff fails to show that he was subjected to an adverse action. An action is adverse if it would deter a person of ordinary firmness from engaging in that conduct. *See Thaddeus-X*, 175 F.3d at 394.   Plaintiff alleges that Johnson's threatened transfer to the pole barns, the transfer to unit C-3, and his transfer from LCF to a different facility constituted adverse actions.   He further alleges that the misconduct ticket that Johnson wrote, Johnson's act of jamming the identification card scanner into Plaintiff's hands, and Johnson's threat to "whip [Plaintiff's] ass" constituted adverse actions.[4]

### 1.   Retaliatory Transfer

In general, a transfer from one prison facility to another is not considered adverse. *LaFountain v. Harry*, 716 F.3d 944, 948 (6th Cir. 2013) (citing *Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003)).   Similarly, an intra-facility transfer to a different cell or unit does not ordinarily amount to adverse action.   *See Mulazim v. Corrigan*, 7 F. App'x 427, 431 (6th Cir.

---

[3] Plaintiff states in his affidavit that he threatened to file a grievance against Defendant Johnson if he continued to harass and threaten Plaintiff.   (ECF No. 52-1 at PageID.313.)   Plaintiff did not allege this in his complaint, and it is not clear when Plaintiff made the alleged threat.   Moreover, it is questionable whether the law was clearly established in the Sixth Circuit at the time that a threat to file a grievance constituted protected activity.   *See Walden v. Palmer*, No. 1:15-cv-766, 2017 WL 1026326, at 8 (W.D. Mich. Feb. 22, 2017), *report and recommendation adopted*, 2017 WL 1020233 (W.D. Mich. Mar. 16, 2017) (noting that it was not clearly established as of October 9, 2014 that a threat to file a grievance constituted "protected conduct" for purposes of a First Amendment retaliation claim).

[4] It is unclear whether Plaintiff asserts that the confiscation of his wrist brace was an adverse action.   He does not allege in his complaint that either Defendant Johnson or Defendant VanOpynen retaliated against him by confiscating his wrist brace.   Moreover, to the extent he accuses either Defendant of taking his wrist brace, he offers nothing more than speculation as support for that assertion.

2001) (transfer from one cell to another not adverse); *Jones v. Cline*, No. 1:17-cv-324, 2017 WL 1531875, at *7 (W.D. Mich. Apr. 28, 2017) (transfer from one unit to another in the same prison, in combination with other acts, held too minimal to constitute adverse action).   "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct."   *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005); *see also Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) ("[A] prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification.").

The Sixth Circuit has recognized that a transfer may constitute adverse action in certain situations.   For instance, placement in administrative segregation or something comparable can constitute adverse action.   *See Hill v. Lappin*, 630 F.3d 648, 474 (6th Cir. 2010).   In addition, if it is foreseeable that the transfer would inhibit or restrict the prisoner's ability to access the courts, then such a transfer could be considered an adverse action that would deter a person of ordinary firmness from continuing to engage in the protected conduct.   *See Siggers-El*, 412 F.3d at 702 (holding that a transfer was an adverse action because it resulted in the plaintiff losing his high-paying prison job that paid for his lawyer fees and moved him further away from the attorney).

Plaintiff fails to present evidence showing that any of the recognized exceptions to the general rule are present in this case.   As for the aborted transfer to the pole barns and the actual transfer to unit C-3, Plaintiff does not allege, and cannot show, that such transfers would have resulted in foreseeable adverse consequences because he remained at the same facility, he did not lose a prison job, and his ability to access the courts was not impaired.   Plaintiff also has not alleged or shown that a transfer to either the pole barns or unit C-3 was equivalent to a transfer to administrative segregation.   Rather, he argues that such transfers would be adverse because unit

B-5 is "the most desirable unit," whereas the pole barns are "the least desirable unit" because they house "young gang bangers . . . in large numbers, who assault, steal etc." and hinder the ability to do legal work because they are loud and not peaceful, like unit B-5.   (ECF No. 52-1 at PageID.315; *see also* ECF No. 52 at PageID.303 (describing unit C-3 as less desirable than unit B-5 because unit B-5 had better amenities).).

Courts have found similar arguments unconvincing.   For example, in *Miles v. Ionia Corr. Facility,* No. 1:18-cv-738, 2020 WL 1290300 (W.D. Mich. Feb. 21, 2020), *report and recommendation adopted*, 2020 WL 1287931 (W.D. Mich. Mar. 18, 2020), the plaintiff argued that his transfer was an adverse action because the transferee-facility had more severe restrictions, fewer privileges, and deplorable conditions of confinement, which exacerbated his chronic care medical conditions.   The court rejected the argument, noting that "prisons are not hotels," and "[a] transfer to the general population of another prison is not an adverse action for purposes of a retaliation claim."   *Id.* at *8 (citing *Jewell v. Leroux*, 20 F. App'x 375, 378 (6th Cir. 2001). Similarly, a prisoner's transfer to a "less desirable facility" that was "more restrictive and further away from his family" was held not to constitute an adverse action.   *Espree v. Burt*, No. 1:14-cv-185, 2016 WL 820943, at *4 (W.D. Mich. Feb. 12, 2016), *report and recommendation adopted*, 2016 WL 814904 (W.D. Mich. Mar. 2, 2016); *see also Ward v. Dyke*, 58 F.3d 271, 274 (6th Cir. 1995) (holding that a transfer to another facility "to give prison staff a respite from [the plaintiff's] continuous barrage of grievances" held not to be adverse even though the new facility was "less desirable" than his former facility); *Hudson v. Wade*, No. 12-2465, at 3 (6th Cir. Mar. 5, 2014) (unpublished order) (holding that prisoner's transfer from one level II facility to another level II facility was not adverse, even though the plaintiff alleged that the new facility provided less law library access, housed mentally ill prisoners, had a documented racist history, required prisoners

to make calls outside in cold weather, and was known for elevating minor rule violations to major misconducts).   For the same reasons, Plaintiff fails to show that his transfer from LCF to another facility, Gus Harrison Correctional Facility—another level II facility—constituted an adverse action.

### 2. Misconduct Ticket

The Sixth Circuit has held that the issuance of a minor misconduct ticket, resulting in the deprivation of privileges, "poses a sufficient deterrent threat to be actionable."   *Maben v. Thelen*, 887 F.3d 252, 267 (6th Cir. 2018) (internal quotation marks omitted).   The same is true even if a prisoner is found not guilty.   *See Fletcher v. Bradford*, No. 1:18-cv-1160, 2018 WL 5961044, at *4 (W.D. Mich. Nov. 14, 2018) (a misconduct ticket on which the plaintiff was found not guilty was sufficiently adverse due to "the potential consequences of the misconducts, even if such consequences were never imposed").

Defendants do not deny that a minor misconduct can constitute adverse action.   They argue that there is no record of a misconduct issued to Plaintiff during June 2014, and Defendant Johnson has no independent recollection of the incident.   (ECF No. 48 at PageID.228.) However, Plaintiff not only states in his affidavit that Defendant Johnson issued Plaintiff a misconduct ticket on which Plaintiff was found not guilty (ECF No. 52-1 at PageID.315), he also provides copies of the Misconduct Report and the Misconduct Hearing Report finding him not guilty (*id.* at PageID.319–20).

### 3. Identification Scanner

Plaintiff alleges that Defendant Johnson jammed an identification scanner into Plaintiff's hands on two occasions, knowing that Plaintiff's right wrist was severely damaged and that Plaintiff's wrist brace had been confiscated.   (ECF No. 52-1 at PageID.314.)   Plaintiff states that he sent two kites to medical for treatment but was never called out.   (*Id.*)   Plaintiff presents a

copy of a request he submitted to healthcare on August 11, 2014, seeking treatment for his wrist because Defendant Johnson slammed the scanner into his hands with enough force to cause breaks in the skin and severe pain to his previously-injured wrist.   (*Id.* at PageID.321.)

Generally, whether an action is sufficiently severe for First Amendment purposes is a question of fact.   *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002).   "However, some adverse actions are so *de minimis* that they do not rise to the level of a constitutionally cognizable injury." *Maben*, 887 F.3d at 266 (citing *Thaddeus-X*, 175 F.3d at 396).   A sufficient injury is required because "it would certainly trivialize the First Amendment to hold that harassment for exercising one's constitutional rights was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise."   *Siggers-El*, 412 F.3d at 701 (internal quotation marks, brackets, and ellipsis omitted).   The deterrent effect "need not be great to be actionable," *Thaddeus-X*, 175 F.3d at 397, and "unless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should go to the jury."   *Bell*, 308 F.3d at 603 (citing *Thaddeus-X*, 175 F.3d at 398).

Although the question is close, the undersigned concludes that the alleged retaliatory action of jamming a scanner into Plaintiff's hands is not an inconsequential act that constitutes a *de minimis* injury.   According to Johnson, the proper use of a scanner to scan prisoners' identification cards does not entail touching prisoners with the scanner.   (ECF No. 48-5 at PageID.282.) Jamming the scanner into a prisoner's hands is thus outside the ordinary use of the device.   While having a scanner "jammed" into one's hands might not, in the abstract, exceed the *de minimis* threshold, Plaintiff alleges that he had a damaged right wrist, his wrist brace had been confiscated, and Defendant Johnson was aware of these facts yet jammed the scanner into Plaintiff's hands on two separate occasions.   Plaintiff further has demonstrated that he sought medical attention for

11

his painful wrist on both occasions.   Under the circumstances, whether Defendant Johnson's acts of jamming the scanner into Plaintiff's hands were sufficiently severe is a question of fact for the jury.  *See Uribe v. McKesson*, No. 08CV01285, 2011 WL 9640, at \*14 (E.D. Cal. Jan. 3, 2011) (concluding that slamming a door on the plaintiff's foot was sufficiently severe to constitute an adverse action).

### 4.    Threats

Defendants argue that Plaintiff's allegations of threats and harassment by Defendant Johnson are not actionable.   The Sixth Circuit has held that verbal harassment and vague or trivial threats do not amount to adverse action.   *See Carney v. Craven*, 40 F. App'x 48, 50 (6th Cir. 2002) ("Even if the grievance was not frivolous, he did not state a claim in the form of verbal harassment. An inmate has no right to be free from verbal abuse . . . and minor threats do not rise to the level of a constitutional violation.").   On the other hand, the Sixth Circuit has held that "threatening the use of physical force" is an adverse action sufficiently capable of deterring a person of ordinary firmness from exercising his First Amendment rights."  *Reynolds-Bey v. Harris*, 428 F. App'x 493, 503 (6th Cir. 2011) (citing *Thaddeus-X*, 175 F.3d at 398).   Here, Plaintiff alleges that, after learning of the Hough grievance, Defendant Johnson stated, "I will whip your ass."   (ECF No. 52-1 at PageID.313–14.)   Although this statement could be interpreted as referring to physical force, it could also be understood in a non-physical way, i.e., "whip your ass into shape" or "I will beat you at this game."   This is particularly true given the context, as set forth by Plaintiff, in which Defendant Johnson followed, "your [sic] on my last nerve LaPine, I'm going to get you out of here," to which Plaintiff responded "I thought you were going to whip my ass Johnson?"   (ECF No. 1 at PageID.7.)   Accordingly, the undersigned recommends that this threat is "too vague to pass the [*de minimis*] threshold."  *Hardy v. Adams*, No. 16-2055, 2018 WL 3559190, at \*3 (6th

Cir. Apr. 13, 2018) (holding that the defendant's threat to make the plaintiff's life "hell" was too vague to amount to adverse action).

      **C.**    **Causal Connection**

Defendants argue that Plaintiff fails to present sufficient evidence to establish the requisite causal connection.  First, they argue that Plaintiff fails to provide any record evidence to show that they were aware of Plaintiff's grievance activity.  As set forth above, however, Plaintiff has presented sufficient evidence that Defendant Johnson was aware of the Hough grievance and Plaintiff's wrist brace grievance.  Second, Defendants argue that Plaintiff cannot establish a causal connection for the transfer because Johnson was not the decisionmaker for prisoner transfers.  As the undersigned has concluded that Plaintiff has failed to show that any of the transfers constituted adverse action, this argument is irrelevant.  Finally, Defendants argue that Plaintiff provides nothing more than temporal proximity to support a causal connection, which alone is generally insufficient to establish a causal connection.  However, Plaintiff relies on more than temporal proximity to establish a causal connection.  Plaintiff claims that Defendant Johnson disliked not only prisoners who filed grievances, but the existence of the grievance process itself, and often reminded the prisoners in his unit of his opinions on grievances.  (ECF No. 52-1 at PageID.313.)  In addition, Plaintiff alleges that Defendant Johnson was irate about Plaintiff helping prisoner Hough write a grievance against Johnson.  *See McCain v. Jenkins*, No. 2:15-cv-1262, 2020 WL 1904712, at *7 (S.D. Ohio Apr. 17, 2020) (concluding that temporal proximity, in addition to the defendant's statement that he was "tired of [Plaintiff] f*cking writing [him] up and threatening to write [him] up!" sufficed to show a causal connection).  Accordingly, Plaintiff has presented sufficient evidence to establish a causal connection.

13

"If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment."  *Thaddeus-X*, 175 F.3d at 399. Here, Defendants argue that they had a non-retaliatory reason for the transfers, but as noted above, the transfers are not adverse actions.  Defendants also argue that Plaintiff has failed to present record evidence to establish his allegations regarding the identification scanner and the misconduct ticket.  This argument fails as Plaintiff has presented sufficient evidence to support these factual allegations.

Accordingly, Plaintiff's retaliation claim against Defendant Johnson should proceed. However, because the transfers were not adverse actions, Plaintiff's retaliation claim against Defendant VanOpynen should be dismissed.

### D.    Due Process Claim

Plaintiff alleges that Defendant Johnson violated his right to both procedural and substantive due process by writing a false minor misconduct ticket.

First, to the extent Plaintiff claims that Defendant Johnson violated an MDOC policy, he fails to state an actionable federal claim.  Claims under Section 1983 can only be brought for "deprivation of rights secured by the Constitution and laws of the United States."  *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 924 (1982).

Plaintiff's procedural due process claim fails as well.  As noted in *Velthuysen v. Henderson*, No. 2:17-cv-71, 2017 WL 1531877 (W.D. Mich. Apr. 28, 2017):

> A minor misconduct conviction does not implicate the due process clause.  A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *See Sandin v. Conner*, 515 U.S. 472, 486–87 (1995).  The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process.  *See, e.g., Ingram v. Jewell*, 94 Fed. Appx. 271, 273 (6th Cir. 2004); *Carter v. Tucker*, 69 Fed. Appx.

678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999).   Because Plaintiff was charged and found guilty of only a Class-II (minor) misconduct, he fails to demonstrate a procedural due process claim.

*Id.* at *2.

Finally, Plaintiff's substantive due process claim lacks merit.   The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]"   U.S. Const. amend. XIV.   "Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty."   *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir.  2002).   "Substantive due process serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used."   *Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)).   "Conduct shocks the conscience if it 'violates the "decencies of civilized conduct."'"   *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952))).   The Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power."   *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999); *see also Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, *4 (W.D. Mich. Dec. 22, 2016); *Robinson v. Schertz*, No. 2:07-cv-78, 2007 WL 4454293 (W.D. Mich. Dec. 14, 2007).

"Where a particular [a]mendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that [a]mendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing such a

claim." *Albright v. Oliver*, 510 U.S. 266, 266 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners)).   If such an amendment exists, the substantive due process claim is properly dismissed.  *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

In this case, the First Amendment provides an explicit textual source of constitutional protection for Plaintiff's retaliation claims.   Thus, the standard applicable to that source, the First Amendment right to be free from retaliation, and not the more generalized notion of substantive due process should be applied.   *Graham*, 490 U.S. at 395; *see also Bell v. Johnson*, 308 F.3d 594, 610 (6th Cir. 2002) (holding that, after *Graham*, the First Amendment standard is the sole source of substantive protection); *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) (A "substantive due process right to free speech is duplicative of [a] First Amendment retaliation claim.").   Moreover, the Sixth Circuit has noted that inmates generally fail to survive summary judgment under the "shocks the conscience" standard.   *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000).   "The rare exceptions have been in cases where, for example, a prison official issued death threats against an inmate with a cocked pistol at his head, or where prison officials trumped up false disciplinary charges against an inmate and then proceeded to physically abuse him and levy harsh disciplinary sanctions against him."   *Id.*  at 414–15.   No such circumstances are present here.

### E.    Excessive Force Claim

Plaintiff alleges that Defendant Johnson violated his Eighth Amendment right to be free of cruel and unusual punishment when he jammed the identification scanner into Plaintiff's hands

and identification card.   (ECF No. 1 at PageID.16–17.)   The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations that occur during imprisonment and are not part of the sentence imposed.   *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Punishment that is without penological justification or involves the unnecessary and wanton infliction of pain also violates the Eighth Amendment's proscriptions.   *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).   In other words, the Eighth Amendment prohibits "the gratuitous infliction of suffering."   *Gregg v. Georgia*, 428 U.S. 153, 183 (1976).

The Supreme Court has held that "whenever guards use force to keep order," the standards set forth in *Whitley v. Albers*, 475 U.S. 312 (1986), should be applied.   *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).   Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7.   In determining whether the use of force is wanton and unnecessary, a court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any effort made to temper the severity of the forceful response.   *Id.* (citing *Whitley*, 475 U.S. at 321).   In *Wilkins v. Gaddy*, 559 U.S. 34 (2010), the Supreme Court affirmed that the "core judicial inquiry" is "not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 37 (quoting *Hudson*, 503 U.S. at 7).   The Court noted that the degree of injury is still relevant to the inquiry, as it may shed some light on the amount of force used, but "[a]n inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim."   *Id.* at 38 (quoting *Hudson*, 503 U.S. at 9).

Plaintiff's allegation that Defendant Johnson jammed a scanner into his identification card and hands is the type of minimal use of force that *Hudson* makes clear does not rise to the level of a constitutional violation.   *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (concluding that the plaintiff's allegations that the defendants bumped, grabbed, elbowed and pushed the plaintiff did "not approach an Eighth Amendment claim"); *Jones v. Cline*, No. 1:17-cv-324, 2017 WL 1531875, at *5 (W.D. Mich. Apr. 28, 2017) (concluding that the plaintiff's claim that the defendant pressed into his back causing him to turn partially around with force was too minimal to rise to the level of a constitutional violation); *Perry v. Agric. Dep't*, No. 6:14-168-DCR, 2016 WL 817127, at *13 (E.D. Ky. Feb. 29, 2016) (holding that the plaintiff's allegation that he was pushed and his handcuffs were "yanked upward" did not describe physical contact sufficiently serious to offend contemporary standards of decency).   Under *Wilkins*, the absence of an injury does not foreclose a claim, but it is relevant to determining the amount of force used.   *Wilkins*, 559 U.S. at 37.   Here, Defendants have shown that Plaintiff did not receive any medical treatment as a result of Defendant Johnson's alleged jamming the scanner into Plaintiff's hands.   (ECF No. 48-8.)   Moreover, when Plaintiff did see a healthcare provider a little more than two weeks after the incidents, he did not complain of an injury or lingering effects from having the scanner jammed into his hands.   (*Id.* at PageID.294.)   While Plaintiff does present a copy of a request he alleges he submitted to healthcare on August 11, 2014, he alleged only pain due to his preexisting wrist injury and breaks in his skin.   (ECF No. 52-1 at PageID.321.)   These injuries are inconsistent with anything more than *de minimis* force.   *See Hendrix v. Streit*, No. 1:13-C-389, 2014 WL 4057830, at *6 (W.D. Mich. Aug. 14, 2014).

Plaintiff's claim also fails because he presents no evidence that Defendant Johnson acted maliciously or sadistically in using the identification scanner.   "It is not enough for a prisoner to

allege mere tortious conduct; the Eighth Amendment's protections from excessive force are not coextensive with those afforded by common law battery." *Harris v. Curtin*, No. 1:05-CV-815, 2008 WL 623829, at *3 (W.D. Mich. Mar. 4, 2008) (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). Here, Plaintiff asks the Court to speculate that Defendant Johnson jammed the scanner into Plaintiff's identification card and hands maliciously and sadistically for the purpose of causing injury, rather than negligently. While Defendant Johnson had no good faith reason to jam the scanner into Plaintiff's identification card and hands, the fact that he did so does not mean that he acted with a culpable state of mind. Plaintiff must do more than allege the use of force and leave it to the Court to infer Defendant Johnson's intent. *See Jackson v. Jackson*, No. 96-5118, 1997 WL 225659, at *1 (6th Cir. May 1, 1997) ("Negligence and deliberate indifference are irrelevant to a claim of excessive force in violation of the Eighth Amendment. Such a claim requires proof that force was applied maliciously and sadistically to cause harm.").

F.    **Conspiracy Claim**

Plaintiff's final claim is that Defendants Johnson and VanOpynen conspired to violate Plaintiff's constitutional rights by moving him from one unit to another at LCF in retaliation for Plaintiff's protected conduct. Plaintiff claims that Defendants' actions violated 42 U.S.C. § 1985 and 1986. Plaintiff's conspiracy claim fails for a number of reasons.

Although Plaintiff does not specify the subsection of Section 1985 he invokes in this claim, the only possible subsection is (3), which, among other things, prohibits conspiracies to deprive "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." Plaintiff's allegations do not fit within the first two subsections.[5]

---

[5] Section 1985(1) prohibits conspiracies to interfere with federal officers in the performance of their duties. The first clause of Section 1985(2) prohibits certain conspiracies in connection with federal court proceedings, and the second clause prohibits certain conspiracies to interfere with

To maintain a cause of action for conspiracy under Section 1985(3), a plaintiff must establish the following elements: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)). In addition, the plaintiff must demonstrate that the conspiracy was motivated by a class-based animus, such as race. *Johnson*, 40 F.3d at 839. Plaintiff does not allege that Defendants conspired to deprive him of equal protection of the laws, but rather to retaliate against him for filing grievances. Plaintiff also alleges no fact suggesting that Defendants were motived by class-based animus.[6] In addition, for the reasons set forth above, the transfers to another unit at LCF and to another facility were not adverse actions that violated Plaintiff's rights. Thus, Plaintiff "cannot succeed on a conspiracy claim [based on the transfers] because there was no underlying constitutional violation that injured [him]." *Wiley v. Oberlin Police Dep't*, 330 F. App'x 524, 530 (6th Cir. 2009). Finally, "because § 1986 is derivative of § 1985, [Plaintiff] also fails to state a claim under § 1986." *Ruiz v. Hofbauer*, 325 F. App'x 427 (6th Cir. 2009) (citing *Browder v. Tipton*, 630 F.2d 1149, 1155 (6th Cir. 1980)).[7]

---

due process in state courts. *See Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006).

[6] Plaintiff's allegations in his affidavit that Defendants were motivated by Plaintiff's Native American status are conclusory and contradict Plaintiff's allegations that Defendants acted because of Plaintiff's grievance activity.

[7] Although not raised by Defendants, Plaintiff's conspiracy claims are also likely barred by the intracorporate conspiracy doctrine because Defendants Johnson and VanOpynen were members of the same collective entity–the MDOC. *See Evans v.* Washington, No. 1:19-cv-953, 2019 WL 6974735, at *4–5 (W.D. Mich. Dec. 20, 2019).

### G.    Qualified Immunity

Defendants also argue that they are entitled to qualified immunity on Plaintiff's claims. The doctrine of qualified immunity provides that government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate a clearly established statutory or constitutional right of which a reasonable person would have known.   *Harlow v.* Fitzgerald, 457 U.S. 800, 818 (1982); *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999).   An "objective legal reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful.   *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).   "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."   *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The qualified immunity inquiry requires a court to decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct.   *Id.* at 232.   If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted.   The court may consider either prong of the inquiry without regard to sequence.   *Id.* at 236.

Because Plaintiff fails to establish his retaliation claim against Defendant VanOpynen, he is entitled to qualified immunity.   Both Defendants are entitled to qualified immunity on Plaintiff's conspiracy claim.   In addition, Defendant Johnson is entitled to qualified immunity on Plaintiff's due process and excessive force claims.   An issue of fact remains as to whether Defendant Johnson retaliated against Plaintiff by issuing Plaintiff a misconduct ticket and jamming the identification scanner into Plaintiff's hands.   Because the law is clearly established that a

21

prison official may not retaliate against a prisoner for engaging in protected conduct, *see Maben*, 887 F.3d at 269, Defendant Johnson is not entitled to qualified immunity on the retaliation claim.

###### H. Eleventh Amendment Immunity

Defendants argue that they are entitled to Eleventh Amendment Immunity on Plaintiff's official-capacity claims.   A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.   *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).   An official capacity suit is thus no different than a suit against the state itself.   *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity.") Because the Eleventh Amendment prohibits suits for damages against states in federal court, *see Quern v. Jordan*, 440 U.S. 332, 342 (1979), the Eleventh Amendment also bars damages claims against state officials in their official capacities.   *See Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (noting that Eleventh Amendment immunity "applies to actions against state officials sued in their official capacity for money damages") (citing *Lapides v Bd. of Regents*, 535 U.S. 613, 616, 623 (2002)).   Accordingly, to the extent Plaintiff sues Defendants in their official capacities, they are immune from suit, and the official-capacity claims should be dismissed.

Plaintiff argues that his official-capacity claims should not be dismissed because he may still seek injunctive and declaratory relief on his claim against Defendant Johnson.   However, Plaintiff is no longer incarcerated at LCF.   "It is well established that '[a] prisoner's transfer to a different correctional facility generally moots his request for injunctive relief against employees of the transferor facility.'"   *McCloy v. Corr. Med. Servs.*, No. 07-13839, 2008 WL 2544722, at *2 (E.D. Mich. June 19, 2008) (quoting *Thompson v. Carter*, 284 F.3d 411, 415 (2d Cir. 2002)). Therefore, Plaintiff's claims for injunctive and declaratory relief should be dismissed as well.

## CONCLUSION

For the reasons set forth above, I recommend that the Court **grant in part and deny in part** Defendants' Motion for Summary Judgment (ECF No. 47):   (1) granting summary judgment on Plaintiff's retaliation claim against Defendant VanOpynen, Plaintiff's conspiracy claim against both Defendants, and Plaintiff's due process and excessive force claims against Defendant Johnson; and (2) denying summary judgment on Plaintiff's retaliation claim against Defendant Johnson, limited to Plaintiff's allegations regarding the misconduct ticket and Defendant Johnson's act of jamming the identification scanner into Plaintiff's hands.

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice.   28 U.S.C. § 636(b)(1)(C).   Failure to file objections within the specified time waives the right to appeal the District Court's order.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


Dated: July 20, 2020                                         /s/ Sally J. Berens
                                                            SALLY J. BERENS
                                                            U.S. Magistrate Judge